## Commonwealth, et al. v. Beam.

(Decided December 15, 1916.)

### Appeal from Nelson Circuit Court.

Intoxicating Liquors—Licenses—Tavern Keepers—Power to Grant —Different Jurisdictions.—The power to grant a tavern license. in a city of the fifth class is vested in the municipality, and not in the county court of the county in which such a municipality is located.

REDFORD C. CHERRY and M. M. LOGAN, Attorney General, for appellants.

C. T. ATKINSON, J. A. FULTON and F. E. DAUGHERTY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The question on this appeal is whether the county court or the municipality has the power to grant a tavern license in a city of the fifth class.

The controversy arises out of the following facts: T. D. Beam leased a hotel in Bardstown, a city of the fifth class, and applied to the county court for a tavern license. The license was refused on the ground that the court had no power to grant it. On appeal to the circuit court the judgment was reversed and the county court directed to issue the license. From this judgment the Commonwealth appeals.

In the case of Commonwealth v. Helback, 101 Ky. 166, Helback was indicted for selling intoxicating liquors without a license in Hawesville, a city of the fifth class. At a called term of the Hancock county court he was granted a license, which the trial court permitted to be offered in evidence. Holding that the license issued by the county court did not protect the defendant, the court said: "Hawesville is a town of the fifth class, and, by the charter of towns of that class, the municipal authorities of the town have the exclusive authority to grant retail license to sell spirituous liquors within the corporation, and a license issued by the county court does not protect the defendant."

In the case of Koch v. Commonwealth, 119 Ky. 476, 84 S. W. 533, the appellant was indicted for the offense

of retailing liquors without a license. Appellant offered to prove that at the time he sold the liquor he had a license from the town of Central Covington, a city of the sixth class, where his saloon was situated; that his state license expired on May 9th, 1903; that on that day he had a license from the town of Central Covington, which expired on June 1st, 1903, at which time his town license was renewed by the municipal authorities for one year; that while his town license was in full force he applied to the county judge of Kenton county for a county license, which was refused; that thereafter he applied to the county clerk for a license, tendering the license fee, together with the cost of issuing it, but the clerk refused to issue the license; that he then instituted a mandamus proceeding against the clerk to require him to issue the license. The court before which the mandamus proceeding was instituted refused to make any order in the case, and thereupon the plaintiff dismissed the suit without prejudice. Thereafter he continued to run his saloon and made the sales for which he was indicted. The court trying the indictments held that the clerk erred in not taking the money and issuing the license, but that the mistake of the clerk did not operate as a license, or excuse the defendant's violation of law in selling without a license. In discussing the case the court said:

"Here the defendant had a license from the municipal authorities of the town. Section 3704 Ky. St., which is a part of the act governing towns of the sixth class, to which Central Covington belongs, provides that the granting of license to sell spirituous, vinous, or malt liquors "shall be under the exclusive control of the board of trustees." In Schwearman v. Commonwealth, 99 Ky. 296, 38 S. W. 146, it was held that, when exclusive authority to grant these licenses is vested in the municipal government, the issue of such a license is not at all dependent upon an order of the county court, but that it is the duty of the clerk to collect the state tax from the person licensed, and that the jurisdiction of the county court to grant licenses is confined to county districts outside of an incorporated city or town in which exclusive authority is vested in the municipality over the subject of license. See Ky. St., section 4203. In that case it was held that the county clerk was liable on his bond for the license taxes collected by him within the city, although no order of the county court had been made, granting

the licenses. The case rests on the ground that, when the applicant has received his license from the municipal authorities, it is the duty of the clerk to receive from him the state tax, and issue to him the state license. This is a mere ministerial act on the part of the clerk. In the cases relied on for appellee, the defendant had no license, but in this case the defendant has a license from the officers who are given by law exclusive jurisdiction in the premises. When he got this license, and tendered to the clerk the state tax, he had done all that the law required him to do. It was then the duty of the clerk to accept the money. When he refused to accept it, he became liable to the state therefor. The case differs from those cited, in that here the defendant had a license from the only authority which had jurisdiction to grant it. It is not like a case where the defendant has been granted no license. The order of the county court refusing appellant a license was void, as the county court had no jurisdiction as to license within the town of Central Covington, and was therefore no authority to the clerk for refusing to receive the money which appellant tendered him.''

In the case of Commonwealth v. Petri, 122 Ky. 20, Petri applied to the Campbell county court for a license to retail liquors in the District of Highlands, under the provisions of section 4203 of the Kentucky Statutes of 1903, which is as follows:

''All licenses mentioned in this article except licenses to sell by retail spirituous, vinous or malt liquors, shall be granted by the county clerk; and license to sell by retail spirituous, vinous or malt liquors shall be granted by the county court; but the county court shall not grant a license to sell spirituous, vinous or malt liquors until ten days' notice shall be given by posting a written or printed notice at the door of the courthouse, and at least at four public places in the neighborhood where the liquor is to be sold; and if the majority of the legal voters in the neighborhood shall protest against the application it shall be refused. The county court in each instance shall determine what constitutes the neighborhood. Nor shall such license be granted to any person of bad character, or who does not keep an orderly, law-abiding house.''

The charter incorporating that district provided that no person, with the exception of the taverns then existing on the Campbell turnpike road, should engage in the busi-

ness of retailing or making intoxicating liquors within the district without a license from the board of trustees. The district trustees protested against the granting of the license. The license was refused by the county court, on the ground that the consent of the trustees was a condition precedent to the court's right to grant the license. On appeal to the circuit court it was held that the provisions of the charter of the District of Highlands relative to liquors were repealed by section 4203 of the Kentucky Statutes, and the judgment was reversed with directions to the county court to try the case on its merits. On appeal to this court the judgment was reversed and the action of the county court sustained. In holding that the charter of the District of Highlands was not impliedly repealed by section 4203 of the Kentucky Statutes, the court said:

"There is no necessary conflict between section 4203 and the provision in the special act regarding the issuance of retail liquor licenses. The general law applies where the subject matter is not regulated by a different statute. In all the municipal corporations of the state there exists the exclusive right to grant retail liquor licenses. Within the corporate limits of these the county clerk merely collects the license tax. The right to grant the license is conferred upon the municipality."

Thus it will be seen from the foregoing cases that while it is true that county courts have long had and exercised the power to grant tavern and other liquor licenses, it has been held repeatedly that they have no power to grant liquor licenses in an incorporated town where that power has been conferred on the municipality itself. The only question remaining, therefore, is whether the power to grant tavern licenses in cities of the fifth class has been conferred on such cities. The city council of cities of the fifth class is empowered "to impose and collect license fees and taxes on stock for breeding purposes, and on all franchises, trades, occupations and professions; but the license for the sale of spirituous, vinous or malt liquors shall not be less than two hundred and fifty nor more than one thousand dollars; and no license shall be issued or granted in any city where the sale of such liquors is now forbidden by law, until such law be changed; Provided, That in any town of the fifth class, in which the question as to whether spirituous, vinous or malt liquors might or should be sold, has been since

September first, one thousand eight hundred and ninety-two, or shall hereafter be submitted to the voters thereof, and the majority of the votes cast thereat were or shall be in favor of the sale of such liquors therein, then the city council of such city shall have no right, power, privilege, or discretion to refuse to grant license to sell such liquors therein until another election is held therein, as provided by general laws, and a majority of the voters of said city have voted against the sale of such liquors; may impose penalties for violations of the conditions of said license; may provide for the annulment or suspension of the license privileges for violation of the conditions of terms of the license, or of the ordinance governing the same. No license to any person or for any business shall be granted for a longer time than one year. The issuing of the different licenses under this chapter shall be under the exclusive control of the city council, who may refuse to grant license, in its discretion, except as herein provided." Section 3637, subsection 4 of the Kentucky Statutes.

It is suggested that the power conferred by the above statute is a mere power to tax for revenue purposes and does not include the power of regulation or control. The statute not only authorizes the city council to collect a license for the sale of spirituous, vinous or malt liquors, but gives it the power to impose penalties for violations of the conditions of the license, and the further power to provide for the annulment or suspension of the license privileges for violation of the conditions of terms of the license, or of the ordinances governing the same. Not only so, but the issuing of the different licenses is declared to be "under the exclusive control of the city council, who may refuse to grant license, in its discretion, except as herein provided." In view of these provisions, it is clear, we think, that the legislature intended to give to the city council not only power to tax, but the exclusive power of granting, refusing or forfeiting licenses for the purpose of regulating and controlling the business of selling intoxicating liquors.

But it is further suggested that the statute is not broad enough to include tavern licenses, because taverns are not specifically mentioned. We see no merit in this contention. The tavern license simply authorizes the sale of intoxicating liquors in connection with a tavern.

The essential feature of the license is the right to sell such liquors. The statute does not in terms cover saloon licenses or coffee-house licenses, or any particular form of license, but deals generally with the entire subject of licensing the sale of spirituous, vinous or malt liquors, regardless of the name or character of the place in which such sales take place. We, therefore, conclude that it is broad enough to embrace tavern licenses, and that the power to grant such licenses is vested in the city council of Bardstown and not in the county court. It follows that a contrary ruling by the circuit court was erroneous.

Judgment reversed and cause remanded for proceedings consistent with this opinion.